**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-24768-CIV-MORENO/LOUIS

LUIS GONZALEZ CALIMANO,

    Plaintiff,

v.

UNITED STATES OF AMERICA.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

**THIS CAUSE** comes before the Court on Movant Luis Gonzalez Calimano's ("Movant") Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct a Sentence. ECF No. 1, 3. This case has been referred to the undersigned United States Magistrate Judge by the Honorable Federico A. Moreno, United States District Judge for all pretrial matters. ECF No. 7. Having carefully considered the Motion, the Response, the Reply, and the record as a whole, the undersigned recommends that Calimano's Motion be **DENIED**.

**I.    BACKGROUND**

    **a.  Facts Related to the Offense**

From approximately November 2014 through July 2016, Movant participated in a conspiracy to fraudulently bill private insurers for treatment and other services that were allegedly rendered to the beneficiaries (employees of companies like AT&T, Pepsico, and Comcast), but were not ever actually provided. ECF No. 9-3 (Factual Proffer) at 1-2. The conspiracy implicated multiple clinics established for fraudulent purposes; Movant was the co-owner and former vice-president of one, Liz Rehab, which submitted roughly $2,609,855 in fraudulent claims for physical

1

rehabilitation services and received approximately $1,376,840 from private insurers such as Blue Cross Blue Shield. *Id.*

In November 2014, Movant signed the leasing paperwork for the Liz Rehab office space as the "Business Co-Owner," and was initially listed on the Liz Rehab articles of incorporation as its vice president. *Id.* Movant then nominally resigned from his role as vice president, but kept signatory authority over the corporate bank account, signing the majority of the corporate checks. *Id.* Movant was the primary individual recipient for checks made out to individuals; checks additionally went to Movant's wife, sister, and patient recruiters who referred beneficiaries to the sham clinic. *Id.* Movant's wife and sister provided no legitimate services to the clinic, and Movant's sister acted at his direction, signing whatever Liz Rehab paperwork Movant gave her, including the Provider Registration Form, Articles of Incorporation, and office space lease paperwork. *Id.*

The grand jury charged Movant and his co-defendant, Vladimir Prado, Sr., with conspiracy to commit health care fraud and wire fraud, in violation of 18 U.S.C. §§1343, 1347, and 1349 (Count 1); health care fraud, in violation of 18 U.S.C. § 1347 (Counts 2 through 4); conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(b) (Count 5); and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(b)(i) (Counts 6 through 8). ECF No. 9-1 (Indictment). Movant pled guilty to Count 1 of the indictment, and in return, the Government agreed to dismiss all other charges and make certain recommendations at sentencing. ECF No. 9-2 (Plea Agreement) ¶¶ 1, 7, 9, 11. Movant's plea agreement acknowledged that the Court could impose a maximum penalty of 240 months imprisonment, and that, irrespective of the Sentencing Guidelines' advisory sentence, the Court could tailor the sentence in light of other statutory concerns and impose a sentence either more or less severe than the Guidelines advised. *Id.* ¶ 2.

2

The United States Probation Office, using the 2016 United States Sentencing Guidelines, prepared a presentencing investigation report ("PSI"), recommending that Movant be sentenced at a total offense level of 26. *USA v. Gonzalez Calimano et al*, 17-cr-20815-FAM-1, ECF No. 59 at ¶¶ 45. Beginning with a base offense of level 7, under § 2B1.1(a)(1), Probation recommended adding 22 levels for the amount of loss, utilizing sophisticated means, and for Movant's role in the offense as a leader or organizer. *Id.* at ¶¶ 235-39. Probation recommended a deduction of three levels under U.S.S.G. §§ 3E1.1(a), (b) for Movant's timely acceptance of responsibility, resulting in the final offense level of 26, *Id.* at ¶¶ 243-45, and a criminal history category of I, resulting in an advisory Guidelines range of 63 to 78 months, *id.* at ¶ 275. Movant's attorney objected to an aggravating role in the offense enhancement and the sophisticated means enhancement, arguing the Movant's adjusted offense level should be at most level 24, with a guideline imprisonment range of 51 to 63 months, but should be as low as level 20, with a guideline range of 33 to 41 months. *Gonzalez Calimano et al*, 17-cr-20815-FAM-1, ECF No. 58 at 7.

At sentencing, Movant's counsel argued against the aggravating role in the offense enhancement, claiming Movant was less culpable than his co-defendant, Prado, who orchestrated the larger scheme. Counsel also argued against the sophisticated means enhancement, noting that Movant was a "58-year-old man with an 11th grade education who does not speak the English language," and Movant only ever acted "at the behest" of Prado. ECF No. 9-5 (Tr. of 3/29/2018 Sentencing Hr'g) at 15:16-25, 16:1-2. Movant himself later told the Court, in explaining that he did whatever Prado told him to do, that he "had just recently arrived in this country." *Id.* at 26:2-3. In rejecting these claims, the Court stated that while Prado should be sentenced severely, Movant was the co-owner and former vice president of Liz Rehab, and Movant only resigned from

3

the latter position to conceal his role in the Rehab while keeping signatory authority over the corporate bank accounts and continuing to operate the sham clinic out of another office, all of which lead to the submission of millions in fraudulent claims. *Id.* at 27: 9-16. The Court noted:

> The fact that you only went to the 11th grade and arrived here from Cuba in 2010 is not a mitigating factor. If anything, it's an aggravating factor. It is sad that for many individuals who arrive from Cuba, that seems to be a way of life and the way that income is being made and I think it's wrong and outrageous. Crime, of course, crosses all boundaries and all frontiers and has nothing to do with ethnicity, but it's certainly not out of ignorance. In fact, what happens is people know others and you involved here other people, too. Is Mr. Prado, Sr. more culpable? Absolutely. If Mr. Prado were here before me, I would give him 20 years without any doubt after hearing everything. I would see what other things I need to hear.
>
> This fraud was even worse than some other frauds I have seen in healthcare because it's a total sham. Some frauds there are some being treated, some things being done. This is a total fraud and that's how you made a living. You're not a rich man. I don't know if Vladimir Prado is a rich man, but he certainly is more culpable and richer than you, but that's not an excuse. It's just too serious. The word has to be spread that healthcare fraud is serious, and in Miami, we've become the number one city for healthcare fraud and sentences have been imposed by this judge and other judges for years and it doesn't seem to deter others because it's easy money in part because either insurance companies or the Government are probably –it's too easy to defraud them apparently, but that, we should never penalize the victims for because it's too easy. And for that reason, I think in this particular case an upward variance is appropriate.

*Id.* at 27: 17-25, 28:1-21. The Court ultimately sentenced Movant to 120 months, an upward variance from the parties' recommendation and the applicable guidelines range, and ordered restitution in the full amount Liz Rehab received in insurance proceeds, $1,376,840. *Id.* at 29:6-11.

Movant's counsel appealed the sentence on April 11, 2018, arguing the Court's application of the sophisticated means enhancement was clear error and that his sentence was procedurally and substantively unreasonable because Prado, the more culpable of the two, was only sentenced to 97 months. On October 22, 2018, the Eleventh Circuit affirmed Movant's sentence, finding the sentence reflected the severity of Movant's offenses. The Eleventh Circuit agreed that Movant's

4

"arguments about his education and English proficiency were not mitigating," and found that the Court had justified the variance "based on the specific § 3553(a) factor of deterrence and because Gonzalez made a comfortable living from the fraud." *United States v. Calimano*, 752 F. App'x 873, 877 (11th Cir. 2018) (per curiam).

Movant filed the instant motion on November 19, 2019, under 28 U.S.C. § 2255. ECF No. 1, 3.  Movant argues that vacating his sentence is necessary under the Sixth Amendment because he received ineffective assistance of counsel at sentencing and on appeal after his counsel failed to object to certain comments made by the Court during sentencing, and which Movant argues counsel should have similarly raised on direct appeal.  On April 8, 2020, the Court ordered the Government to respond to Movant's motion by May 8, 2020.  ECF No. 4.  The Government filed its response on April 14, 2020, ECF No. 9, and Movant filed a reply on May 19, 2020, ECF No. 14.

## II.   DISCUSSION

Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody may move the court that imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack.  If a court finds a claim under § 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id*.  To obtain this relief on collateral review, however, a habeas petitioner must "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment).

Under 28 U.S.C. § 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002) (explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous").

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his Defense." U.S. Const. amend. VI. To prevail on a habeas corpus petition based on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 669 (1984). Courts review counsel's performance in a highly deferential manner under a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. For the second prong "*Strickland* places the burden on the defendant to show a 'reasonable probability' that the result would have been different." *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (quoting *Strickland*, 466 U.S. at 694).

The constitutional right to effective assistance of counsel remains during the course of a criminal defendant's direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Appellate counsel need not, "and should not," however, be required to raise all nonfrivolous arguments during the appeal. *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745, 751–54 (1983)). Rather, appellate counsel may selectively decide which arguments to raise in order to "maximize the likelihood of success on appeal." *Id.* While still possible to bring a

*Strickland* claim based on appellate counsel's failure to raise certain arguments, "it is difficult to demonstrate that counsel was incompetent." *Id.* (citing *Gray v. Greer*, 800 F.2d 644, 645 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.")).

Typically, issues not raised on direct appeal are barred procedurally from being raised during a § 2255 motion, but one potential cure for this procedural default is the "cause exception," if the defendant shows cause for not raising the issue on direct appeal and actual prejudice. *Cowan v. United States*, No. 17-12702-D, 2018 WL 6919887, at *4 (11th Cir. Sept. 11, 2018) (citing *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004)). Meritorious ineffective assistance of counsel claims may satisfy the cause exception, which requires the Court to consider whether the arguments that the defendant claims his attorney failed to raise were significant enough to have affected the outcome of his appeal. *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (citations omitted).

A court deciding an ineffective counsel claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Strickland*, 466 U.S. at 690. A convicted defendant making such a claim must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id*. To determine whether counsel's performance was deficient, the court must, with much deference, consider whether counsel's assistance was reasonable considering all the circumstances. *Id*. at 688. Moreover, the court must avoid the "distorting effects of hindsight" and assess the reasonableness of counsel's performance from his perspective at the time of the challenged conduct. *Id*. at 689. In this regard, "strategic choices" made by counsel after thoroughly investigating the relevant law and facts are "virtually unchallengeable." *Id*. at 690.

7

"Where the record is incomplete or unclear about counsel's actions," the court "will presume that he did what he should have done, and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (2000) (internal quotation marks and alterations omitted).

In particular, counsel cannot be found deficient for failing to object in the absence of error. *Diaz v. Sec'y of Dep't of Corr's*, 402 F.3d 1136, 1144–45 (11th Cir. 2005). "A lawyer's failure to preserve a meritless issue plainly cannot prejudice a client," *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (citing *Strickland*, 466 U.S. at 692–93), because in such cases a petitioner will be unable to show "that his counsel's performance was deficient or that the outcome of the proceedings would have been different but for counsel's allegedly deficient performance," *see Nyhuis*, 211 F.3d at 1346 (citing *Strickland*, 466 U.S. at 687). For the same reasons, this is equally true for claims that counsel was ineffective for not raising frivolous issues on direct appeal. *See Diaz*, 402 F.3d at 1144–45 (non-meritorious claims not raised on direct appeal do not constitute ineffective assistance of counsel); *see also Cowan*, 2018 WL 6919887, at *4 ("Appellate counsel is not ineffective for failing to raise meritless issues.").

Regarding the prejudice requirement, the Supreme Court observed that an unreasonable error by counsel does not justify setting aside a criminal judgment when the "error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Thus, absent special circumstances, the defendant must affirmatively prove prejudice resulting from his counsel's deficient performance. *Id*. 692-93. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Establishing *Strickland*'s deficient-performance and prejudice elements "is not easy: 'the cases in

which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1322 (11th Cir. 2002) (per curiam) (quoting *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc)). If a petitioner makes an insufficient showing on either element, the court need not address the other element. *See Strickland*, 466 U.S. at 697.

### a. Ineffective Assistance of Counsel at Sentencing

Movant's first ground for vacating his sentence is that he received ineffective assistance of counsel during the sentencing phase of his case, arguing that counsel's failure to object to the Court's use of his Cuban heritage as an aggravating factor rose to the level of a lapse in representation. Because Movant's national origin was not a factor the Court considered in his sentencing, any legal argument to the contrary is without merit. Movant cannot, therefore, show that the failure to object to the Court's reference to his ethnicity constituted a deficient performance by his attorney, nor can Movant show that his sentence would have in any way differed had his counsel objected, and his claim of ineffective assistance of counsel at sentencing fails.

Specifically, Movant claims that counsel should have objected to the sentencing court's "use of Mr. Calimano's Cuban heritage as an aggravating sentencing factor," ECF No. 3 at 15-16, given that the Sentencing Guidelines state that national origin is not relevant in determination of a sentence, *see* U.S.S.G. § 5H1.10; *United States v. Romero Cuza*, 790 F. App'x 190, 193 n.1 (11th Cir. 2019) (citing U.S.S.G. § 5H1.10). While the Eleventh Circuit has acknowledged that referring to a defendant's national origin or immigration status during sentencing can create the "appearance of bias," *see Romero Cuza*, 790 F. App'x at 193 n.1, "mere references to a forbidden factor are permissible when the district court imposes the sentence because of the behaviors and motivations prompted by that factor and not by the underlying factor itself," *United States v. Wenxia Man*, 891

9

F.3d 1253, 1275 (11th Cir. 2018). In *Romero Cuza*, for example, the Eleventh Circuit affirmed a sentence where, while the sentencing court made "mocking" comments obliquely referencing the defendant's immigration status and need for an interpreter, the court otherwise explained its sentencing decision thoroughly. *See Romero Cuza*, 790 F. App'x at 193.

While it has never held so explicitly, the Eleventh Circuit has indicated skepticism that the appearance of bias alone during sentencing would rise to the level of a Due Process violation. *See United States v. Rodriguez*, 627 F.3d 1372, 1381 (11th Cir. 2010) ("The general language of the Due Process Clause does not make it plain that the appearance of bias, without actual bias, violates that or any other constitutional provision. And Rodriguez has identified no decision, nor have we found one, where this Court or the Supreme Court has held that the appearance of bias is enough by itself to be a constitutional violation." (citing *In Hendrix v. Secretary, Florida Department of Corrections*, 527 F.3d 1149 (11th Cir. 2008)). While the Eleventh Circuit acknowledged in *Rodriguez* that the Supreme Court found that the probability of actual bias may be enough to violate Due Process in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), the Eleventh Circuit emphasized that *Caperton* dealt with "extreme facts" and "limited its holding to the extraordinary situation where the probability of actual bias rises to an unconstitutional level." *Rodriguez*, 627 F.3d at 1382 (internal quotations omitted).

As a practical matter, however, actual bias has consistently been required in the Eleventh Circuit in order to overturn a sentence on direct appeal, and that is the standard this Court applies today in the context of Movant's ineffective assistance of counsel claim. *See Romero Cuza*, 790 F. App'x at 194 (finding that, under *United States v. Pugh*, 515 F.3d 1179, 1194 (11th Cir. 2008), "[a] sentence may be substantively unreasonable "if it is grounded solely on one factor, relies on impermissible factors, or ignores relevant factors"); *Rodriguez*, 627 F.3d at 1382 (finding that,

when reviewing a sentence under the plain error rule, the error in question must have affected the petitioners substantial rights and that making that showing "almost always requires that the error must have affected the outcome of the district court proceedings" (citations omitted)).[1]

In his Motion, Movant compares his case to *United States v. Trujillo-Castillon*, 692 F.3d 575 (7th Cir. 2012), but the parallel highlights the disparity between the two. Here, Movant contends that the Court raised his national origin and immigration status during sentencing "with no justification." ECF No. 1-1 at 13. The transcript of the proceeding, however, reveals that the Court referenced Movant's national origin and immigration status in direct response to Movant's attempt to refute applicability of the sophisticated means sentence enhancement; defense counsel argued that Movant was "a 58-year-old man with an 11th grade education who does not speak [] English," ECF No. 9-5 at 15:15-24, and Movant himself later stated that "I had just recently arrived in this country, sir," *id.* at 26:2-3. Movant's counsel argued that his ignorance made him less culpable than his co-conspirator, and, in doing so, himself inserted the subject of Movant's national origin into the sentencing conversation. In *Trujillo-Castillon*, in contrast, not only did the government raise the issue, but the sentencing judge and the defendant's own counsel engaged the government's argument and the three sifted through the connections between the defendant's ethnic background to his current status, directly comparing him with past criminals to come from Cuba and contrasting the values of Cuban emigres with those of Americans. The record conclusively shows no such comparison or analysis was undertaken with respect to Movant's

---

[1] Even under the "appearance of justice/reasonable observer" standard urged by Movant, a different result is not here warranted as the cases advanced by Movant recognize that references to national origin during sentencing do not require reversal absent indication that the court considered the factor in determining the sentence. *See Kaba*, 480 F.3d 152, 156 (2d Cir. 2007) ("[A]lthough reference to national origin and naturalized status is permissible during sentencing, it is allowed only so long as it does not become the basis for determining the sentence."); *United States v. Tarricone*, 996 F.2d 1414, 1424-25 (2d Cir. 1993) (refusing the vacate a sentence in which, while the district court imposed a sentence in excess of the recommendation in the PSI, the court noted that America was "supposed to be a haven for [the defendant]; instead, it turned out to be a hell for us," when viewed in context, the defendant's record supported the sentence sufficient to "satisfy the appearance of justice").

sentence.

Perhaps most importantly, unlike the sentencing court in Trujillo-Castillon's case, the Court here explicitly rejected ethnicity as a sentencing basis, and thoroughly explained the bases for the upward variance. After listening to the Government tick through the list of Movant's offenses, the Court's initial response was that it "seems from what you're saying, you should seek a high end [of the sentencing range]." ECF No. 9-5 at 21:18-19. Moreover, the 120-month sentence imposed by the Court, while above the recommendation in the PSI, was still only half the statutory maximum of 240 months. Just as the *Rodriguez* court observed, "[i]n light of all of the circumstances, including the nature and extent of the multi-million dollar crime, the sentence that was imposed seems, if anything, on the light side of what a reasonable observer would have expected." *See* 627 F.3d at 1381.

While the Court did, in rejecting Movant's ignorance argument, remark that "[i]f anything, it's an aggravating factor. It is sad that for many individuals who arrive from Cuba, that seems to be a way of life and the way that income is being made and I think it's wrong and outrageous," the Court explicitly rejected national origin as a factor sufficient to explain Movant's conduct: "[c]rime, of course, crosses all boundaries and all frontiers and *has nothing to do with ethnicity*, but it's certainly not out of ignorance." ECF No. 9-5 at 27:17-24 (emphasis added). The Court then stated that while Movant's co-conspirator might be more culpable, this relative culpability disparity was "not an excuse" given the severity of the healthcare fraud and Movant's role in it. This Court expounded on the severity of the healthcare fraud in Miami generally, lamenting that prior sentences imposed by himself and others for healthcare fraud were apparently an insufficient deterrent; thus the judge found that "for that reason" an upward variance was appropriate to communicate that severity to others. *Id.* at 28:2-21. The Court also noted that, were he handling

12

the sentencing, he would readily give Movant's co-conspirator a 20-year sentence—double the sentence imposed for Movant—which suggests that the Court simply found healthcare fraud reprehensible. Because the record shows no error occurred, counsel's failure to object to this Court's mention of Movant's Cuban heritage during sentencing was not deficient. *See Winfield*, 960 F.2d at 974 (citing *Strickland*, 466 U.S. at 692–93)).

Because Movant fails on the deficiency prong, the Court need not consider prejudice, *Strickland*, 466 U.S. at 697, but, even so, Movant has failed to show a reasonable probability that the outcome of his sentencing would have been different had his counsel objected. Movant is correct that errors in the law that impact the sentencing calculation and lead to any increase in jail time carry "Sixth Amendment significance," *see Glover v. United States*, 531 U.S. 198, 198-99 (2001), but counsel's deficiency must be such that there is a reasonable probability that it impacted the outcome. S*ee Strickland*, 466 U.S. at 694. While even the most minute changes in a sentence are relevant, the size of the impact cannot be conflated with the likelihood of the outcome. Otherwise put, the fact that even a reduction of "only a few months" would be sufficient to trigger prejudice does not, as a matter of causality, mean that it is *any more likely* the Court would have taken this course of action had Movant's counsel objected. Even if Movant's proposed objection had merit, Movant does not provide facts or legal precedent that would demonstrate a reasonable probability that the Court would have sentenced him to less than 120 months' imprisonment.

### b. Ineffective Assistance of Counsel on Appeal

Movant next avers that his defense counsel did not provide effective assistance on appeal, arguing more explicitly here that, on appeal, his counsel was ignorant of U.S.S.G. § 5H1.10, and was deficient in failing to argue to the Eleventh Circuit that the district court considered Movant's Cuban heritage during sentencing. ECF No. 3 at 17. Because Movant's proposed objection would

have been meritless at the sentencing phase, however, his counsel was under no obligation to raise the argument on appeal. *See Diaz*, 402 F.3d at 1144–45; *Cowan*, 2018 WL 6919887, at *4. Even if the claim was nonfrivolous, Movant's counsel had the discretion to disregard certain arguments in order to maximize the likelihood of success of others. *See Smith*, 528 U.S. at 288.

Movant argues that "[s]olid, meritorious arguments based on directly controlling precedent and law, then, should be discovered and brought to an appellate court's attention." ECF No. 3 at 17. To prevail here, Movant must show more than the mere fact that counsel failed to raise potentially meritorious claims; he must show that "no competent counsel, in the exercise of reasonable professional judgment, would have omitted those claims." *See Hittson v. GDCP Warden*, 759 F.3d 1210, 1263 (11th Cir. 2014) (citing *Chandler*, 218 F.3d at 1315); *see also Smith*, 528 U.S. at 288 (noting that prevailing on a motion to vacate will generally require a showing that the excluded claim was stronger than those counsel elected to address on appeal) (citing *Gray*, 800 F.2d at 645)).

On appeal, Movant's attorney argued that (1) application of the sophisticated means enhancement was clear error in light of Movant's limited education and English proficiency, and (2) Movant's sentence was procedurally and substantively unreasonable in light of Prado's lesser sentence, *United States v. Calimano*, 752 F. App'x 873, 875 (11th Cir. 2018) (per curiam), and Movant "alleges no facts to overcome the presumption that [counsel] exercised reasonable professional judgment in deciding which claims to raise and which claims to omit," *Hittson*, 759 F.3d at 1264. Taken together with the meritless nature of the argument that Movant's sentence violated U.S.S.G. § 5H1.10, I cannot find that Movant's counsel was deficient on appeal.

Nor can Movant prove that the outcome of his appeal would have differed had his counsel argued that his sentence violated U.S.S.G. § 5H1.10. Movant cannot carry his burden here because

14

his sentence did not violate U.S.S.G. § 5H1.10 and thus no error occurred. That aside, notably, in considering his appeal, the Eleventh Circuit found at every turn that Movant's sentence was justified based on the severity of his offenses; it affirmed the sophisticated means enhancement, finding that Movant's actions revealed that he "tried to conceal and perpetuate the fraud and hide transactions using fraudulent entities." *Calimano,* 752 F. App'x at 875-76. The Circuit Court noted further that, in considering the § 3553(a) factors, the district court "decided that [Movant's] arguments about his education and English proficiency were not mitigating, and explained that the upward variance was based on the specific factors of deterring future similar healthcare frauds and the fact that Gonzalez made a decent living from the fraud." *Id.* at 877. The Circuit Court also remarked that, substantively, Movant's sentence reflected the "seriousness of his offense in that he involved others in the fraud, caused Liz Rehab to make $1,376,840 in payouts from $2,609,855 in false claims ran out of a different sham clinic. . . [i]t also shows the need to provide just punishment for his offense under the same facts." *Id.*

Given the ample bases the Eleventh Circuit found to justify Movant's sentence despite his counsel's arguments that, at sentencing, the Court misapplied the Sentencing Guidelines and the § 3553(a) factors, and because the claim that the Court violated U.S.S.G. § 5H1.10 is without merit, Movant cannot show he was prejudiced; I therefore recommend that Movant's claim for ineffective assistance of counsel on appeal similarly be denied.

    c. **No Need for Evidentiary Hearing**

Although § 2255 mandates that a court conduct an evidentiary hearing unless the motion and record conclusively show that the movant is entitled to no relief, a petitioner must support his allegations with at least a proffer of some credible supporting evidence that would show he is entitled to relief. *See, e.g.*, *Chandler v. McDonough*, 471 F.3d 1360, 1363 (11th Cir. 2006); *Scott*

*v. United States*, 325 F. App'x 822, 824 (11th Cir. 2009) (where a § 2255 motion is supported by nothing more than generalized allegations that are affirmatively refuted from the record, no evidentiary hearing is necessary); *see also Hill v. Moore*, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See, e.g.*, *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Aron*, 291 F.3d at 715  (no evidentiary hearing is required "where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous").

The pending Motion can be decided from the record, which evidences conclusively that Movant is not entitled to relief. Consequently, the Court need not conduct an evidentiary hearing on his § 2255 Motion. *See* 28 U.S.C. § 2255; *see also Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) ("An evidentiary hearing is not required when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" (quoting 18 U.S.C. § 2255)).

## III. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Calimano's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct A Sentence, ECF No. 1, 3, be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections by that date shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based

on any unobjected-to factual or legal conclusions included in the Report. See 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**RESPECTFULLY SUBMITTED** in Chambers this on this 23rd day of February, 2021.

_____
**LAUREN F. LOUIS**
**UNITED STATES MAGISTRATE JUDGE**